THE STATE ex rel. MILES BULGER, Petitioner, v.
ALLEN C. SOUTHERN, Judge of Circuit Court
of Jackson County at Kansas City, and BERT W.
WELCH.

In Banc, June 14, 1919.

1. **ELECTION CONTESTS:** Recount By Commissioners in Cities.
Sections 6143 and 5922, Revised Statutes 1909, when read to-
gether, as they must be, provide for a recount of ballots in an
election contest, by the election commissioners in Kansas City,
St. Louis or "any other city hereafter having registration of
voters."

2. ————: Time for Institution: After Notice: Jurisdiction. Since
the statute provides that an election contest "shall be determined
at the first term" of the court authorized to hear it "that shall be
held fifteen days after the official counting of the votes, and serv-
ice of notice of contest " given the opposite party within twenty
days after the votes shall have been officially counted, any division
of the Circuit Court of Jackson County whose regular term begins
fifteen days after said notice is served or is due has jurisdiction
of the contested election case; that is, the contestant has twenty
days in which to serve his notice, and a circuit court whose regu-
lar term is to begin fifteen days after such service has jurisdiction
of the case.

3. **COMPUTATION OF TIME:** Exclusion of Sunday. Where the
statute requires that "the time within which an act is to be done
shall be computed by excluding the first day and including the
last, if the last day be Sunday it shall be excluded," the last day if
it be Sunday is not to be included in computing the time, but is
to be excluded from the computation, and the time named ends on
the following Monday, and not on the preceding Saturday.

4. **ELECTION CONTEST:** Notice: Constructive Service Before Ex-
piration of Time for Personal Service. The statute provided that
no election of a county officer shall be contested "unless notice of
such contest be given the opposite party within twenty days after
the votes shall have been officially counted" by delivering a copy
to such opposite party, or leaving it at his usual place of abode
with some member of his family over the age of fifteen years, or
"if neither such contestee nor his family can be found in the
county," by posting "a copy in the office of the clerk of the court
wherein the contest is to be heard." The twentieth day after the
official count was completed was Sunday, and neither the contes-

State ex rel. Bulger v. Southern.

tee nor a member of his family being found in the county the notice was posted in the office of the clerk on Saturday, the 19th day. *Held*, that the contestee was entitled to personal service up to and including Monday, the 21st day, and a return made on Satur· day the 19th day was premature and illegal, and constituted no basis for constructive service, and there was no service of the no· tice, personal or constructive.

*Held,* by WOODSON, J., dissenting, with whom BOND, C. J., con· curs, that the posting of the notice in the clerk's office was not premature, nor was the sheriff required to retain the writ until Monday the 21st day in order that he might make further effort to personally serve contestee or some member of his family, but the constructive service by posting on the 19th day was sufficient.       —

5. ———: ———: ———: **Waiver of Service: Appearance.** An elec· tion contest is a special and statutory proceeding, not according to the course of the common law, and notice according to the stat· ute is essential to jurisdiction; and where the statute specifically provides that "no election of any county officer shall be contested unless notice of such contest shall be given the opposite party within twenty days after the votes shall have been officially counted," an appearance solely to challenge the jurisdiction for lack of service of notice gives no jurisdiction of the person.

6. ———: ———: ———: ———: **Waiver: Appearance for Other Purposes.** *Held,* by BLAIR, J., with whom FARIS and WILLIAMS, JJ., concur, that, while in an ordinary action an appearance coup· ling other grounds with an attack on the court's jurisdiction of the person ordinarily constitutes waiver of objection to service, the rule does not apply, in all respects, to an election contest; and that where there was no sufficient service of notice of the contest, an appearance by the contestee by a motion in which he directly charged a lack of service of the notice, and coupled with that charge (a) a challenge of the legal sufficiency of the notice, (b) an attack on the service because not made in time for the regu· lar term of a division of the court in which it is claimed the case should have been brought and (c) a charge that the court had no power to order a recount of the ballots, did not amount to a waiver of a lack of service, but the motion as a whole showing an attack on the jurisdiction for want of service, it will not by these other things be expanded into a waiver. *Held,* also, that the in· tent of the movent is of consequence upon the question of waiver, and the meaning of words, used in a motion filed as a special ap· pearance, will not be selected which will transform it into a general appearance.

7. ———: ———: **Waiver: Jurisdiction.** *Held,* by GRAVES, J., with whom WALKER, J., concurs, that where there is no service of notice in an election contest, the court does not obtain jurisdiction

of the subject-matter (the contest), and hence the question of waiver of service, or waiver of jurisdiction of the person of contestee by his appearance, is not in the case.

## Prohibition.

PRELIMINARY RULE MADE ABSOLUTE.

*H. S. Julian, T. A. J. Mastin* and *A. L. Cooper* for appellant.

(1) Election contest proceedings are everywhere regarded and treated as special statutory proceedings, and are not civil suits, and the statute in reference to contests must be strictly construed. There is no implication in its favor and resort cannot be had to the Code of Civil Procedure. State ex rel. v. Spencer, 166 Mo. 279; State ex rel. v. Hough, 193 Mo. 643; Castello v. Court, 28 Mo. 277; Bowen v. Hixon, 45 Mo. 340. (2) Where a right depends upon giving a notice in a given time, and the notice is not given in the required time, it is jurisdictional, and unless strictly complied with, the court is without authority to proceed. Bowen v. Hixon, 45 Mo. 344; 15 Cyc. 400; Barker v. Railroad, 91 Mo. 86; McIntosh v. Railroad, 103 Mo. 131; Mathewson v. Railroad, 219 Mo. 542 to 549; Chandler v. Railroad, 251 Mo. 592, 600. (3) The notice of contest constitutes both a petition and a writ. Castello v. Court, 28 Mo. 277; State ex rel. v. Klein, 116 Mo. 259. (4) If it was a writ, the sheriff had twenty days in which to serve it personally upon the contestee, or by leaving a copy at his usual place of abode with some member of his family over fifteen years of age, and had no right to resort to constructive service by posting it up in the clerk's office, until the twenty days had expired. And, if he resorted to constructive service at two o'clock p. m. November 30, 1918, it was premature and the constructive service did not bring the contestee into court. Lumber Company v. McCabe, 220 Mo. 167; Van Natta v. Real Estate Company, 221 Mo. 377; Tooker

v. Leake, 146 Mo. 419; Cummings v. Brown, 181 Mo. 711.
(5) Sec. 5928, R. S. 1909, is mandatory that this contest,
if brought at all, should have been brought at In-
dependence, where the regular term of court opened
December 2, 1918. State ex rel. v. Evans, 184 Mo. 632;
Montgomery v. Dormer, 181 Mo. 5; Adcock v. Lecompt,
66 Mo. 40. (6) There is no authority given in Article 6
of Chapter 42, or anywhere else in the statutes, to the
court to make an order upon the board of election
commissioners. (7) Sections 5939, 5940, 5941, 5942 and
5943 show that the General Assembly has acceded to the
demands of the Constitution in placing safeguards
around the secrecy of the ballot, so far as the Clerk of
the county court is concerned, but it has been derelict in
that regard so far as the board of election commission-
ers is concerned. State ex rel. v. Dillon, 87 Mo. 487;
State ex rel. v. Spencer, 164 Mo. 23; Ex parte Arnold,
128 Mo. 256; State ex rel. v. Frances, 88 Mo. 557;
State ex rel. v. Board of St. Louis Public Schools, 112
Mo. 213.

*Watson, Gage & Watson* for respondents.

(1) Under the various statutes there can be no ques-
tion about the power and duty of the court in an election
contest to command the election commissioners to open
the ballot boxes. (2) The official count was completed
on the 11th day of November. The contestant had twen-
ty days from that date within which to serve his notice
of contest. The notice was filed on the 27th day of
November, and posted November 30th. The first day of
the term at Independence began on the 2d day of
December. There were not fifteen days intervening.
But the notice was filed and served within twenty days.
The notice of contest was, therefore, filed less than
fifteen days before the December Term, and hence could
not be returnable at that term. Ramsey v. Huck, 267
Mo. 339; State ex rel. v Hough, 193 Mo. 647. The
language of the statute is specific that it shall be tried
at the first term held fifteen days after the official count

and service of notice of contest. The service of notice of contest was had within the twenty days, and this contest is brought to the first term of the Circuit Court of Jackson County held fifteen days after the filing of the notice of contest. (3) The court will take judicial notice of the fact that December 1st came on Sunday, and under Sec. 8057, R. S. 1909, Sunday was excluded, and the last day for service was the day previous, or Saturday, November 30th, the day. upon which this notice was posted. State ex rel. v. McElhinney, 199 Mo. 80. The only question, then is, whether the sheriff, having held this notice from November 27th up to and including two o'clock, p. m. of the last day upon which service could be had, made a premature return by posting up this notice in the office of the clerk. The officer certifies that he had made diligent search for and failed to find Miles Bulger in Jackson County, from the 27th day of November up to and including two o'clock, p. m. November 30th, the last day for service, and that he also made diligent search for and failed to find any member of his family over the age of fifteen years, in Jackson County, from November 27th up to and including November 30th, at two o'clock, p. m. The remarkable contention is made in this case that the sheriff should have held the writ the full twenty days in order to get personal service on Bulger before posting the same in the office of the clerk of the circuit court. In other words, that he must give full twenty days' time in which to serve Bulger personally before he could resort to constructive service. Such a contention absolutely nullifies this statute. It is clear from all the authorities, "that when an act is to be done within a given number of days from the date or day of the date or act done, the day of the date is excluded. Otherwise, an act to be done in one day must be done on the same day, and as there is no fraction of a day, such a stipulation must create an obligation to do it instanter." Inhabitants v. Inhabitants, 8 Cush. 374. It is a well settled rule in this State,

and wherever the common-law rule prevails, that fractions of a day are not counted in the service of process or pleadings, or other legal documents. Kimm v. Osgood, 19 Mo. 60; Shaffer v. Detie, 191 Mo. 387; Ball v. Mander, 19 How. Pr. (N. Y.) 468; In re Puglisi, 230 Fed. 189; Portland Bank v. Maine Bank, 11 Mass. 205; Freeman on Judgments, sec. 370; Bruce v. Vogel, 38 Mo. 104; United States v. Lumber Co., 142 Fed. 432; National Bank v. Burkhardt, 100 U. S. 689. (4) A failure to serve the notice of an election contest for county office within the time prescribed by statute, and defect in the manner of service are waived by a general appearance of the contestee. It has been decided, that in a writ of prohibition the sufficiency of the petition cannot be challenged. State ex rel. v. Cave, 272 Mo. 653; State ex rel. v. Klein, 116 Mo. 268; Newcomb v. Railroad Co., 182 Mo. 707; Peter v. Railroad, 59 Mo. 408; Tower v. Moore, 52 Mo. 118; Pry v. Railroad, 73 Mo. 127; Orear v. Clough, 52 Mo. 55; Hill v. Barton, 194 Mo. App. 325.

BLAIR, J.—Relator seeks to prohibit the Circuit Court of Jackson County from proceeding further in an election contest. November 5, 1918, relator and respondent Welch were opposing candidates for Presiding Judge of the County Court of Jackson County. The official count was completed and, as announced on November 11th, showed the election of relator by several thousand votes. November 27th Welch filed in the circuit clerk's office at Kansas City a notice of contest, which was delivered to the sheriff for service on the same day. The sheriff made return that he had "made diligent search for and failed to find the said Miles Bulger in Jackson County, Missouri, up to and including two o'clock p. m. of November 30, 1918, and made diligent search for and failed to find any member of the family of said Miles Bulger, over the age of fifteen years, at his usual place of abode in Jackson County, Missouri, up to and including two o'clock p. m. of

November 30, 1918," and on the same day, at the same hour, the sheriff posted a copy of the notice in the office of the circuit clerk at Kansas City. On December 20, 1918, Welch filed an application for an order to open the ballot boxes. About December 30, 1918, relator filed a motion which recited that the appearance "is for the purpose of this motion only." The first four grounds directly charged a lack of service of the notice of contest. The fifth charged that the court was without jurisdiction to hear and determine the contest "for the reason that the pretended notice of contest given by said contestant is based upon alleged objections to the qualifications of voters, and the names of none of said voters are stated in said notice, and the alleged objections are not specified." The sixth ground was that the court had no jurisdiction, because the term at Kansas City was not the first term held in Jackson County fifteen days after the official count; that the contest should have been filed at Independence. The other grounds were that the notice was (7) not legally sufficient, and (8) had not been so filed that any contest was pending. This motion was withdrawn, and another filed January 6, 1919. The first four and the sixth grounds were the same as in the first motion. The fifth ground was as follows: "Said court is without jurisdiction to make said order for the reason that it is not empowered so to do in Article 6 of Chapter 43, Revised Statutes 1909." The court overruled this motion and a like motion to quash, for like reasons, a notice to take deposition. On January 10, 1919, the court sustained the application of Welsh. Relator, on the same day, applied here, and a preliminary rule in prohibition was issued.

I. It is argued there is no act regulating the course of the election commissioners in making a recount and, therefore, no such recount can be had in Kansas City. Section 6143, Revised Statutes 1909, contains the fol-

Recount
in Cities.

following : "Provided, that if any contest of the election of any officer voted for at such election . . . shall be pending . . . the ballots shall not be destroyed until such contest . . . be finally determined. In all cases of contested elections, the parties contesting the same shall have the right to have said ballots opened and counted, and to have all errors of the judges in counting or refusing to count any ballot corrected by the court or body trying such contest." This section applies to Kansas City. Section 5922, Revised Statutes 1909, provides that "the powers and duties herein given to and imposed upon the clerks of the several counties shall be exercised in reference to St. Louis and Kansas City, *and to any other city hereafter having registration of voters,* by the board of election commissioners of such city." This section includes all cities within the class at the time and all which might thereafter come into that class. It is applicable to contested elections. [State ex rel. v. Klein, 116 Mo. l. c. 265, et seq.] It is true the article relating to contests has been said to be a code unto itself so far as concerns procedure in an election contest, but this does not argue that the usual rules of construction do not apply in determining whether particular provisions of other articles of the same chapter are, in effect, parts of the article relating to contests.

II. A term of court opened at Independence on December 2, 1918. It is contended the contest should have been filed at Independence and that the Kansas City division had no jurisdiction. Section 5928, Revised Statutes 1909, reads as follows: "Every court authorized to determine contested elections shall hear and determine the same in a summary manner, without any formal pleading; and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes, and service of notice of contest, unless the same shall be continued by consent, or for good cause shown."

Jurisdiction

Section 5924, Revised Statutes 1909, provides that no election of county officers shall be contested unless notice of such contest shall be given the opposite party within twenty days after the votes shall have been officially counted.

Prior to 1879 (Sec. 57, p. 67, G. S. 1865) the clause "and service of notice of contest" did not appear in the statute. The cases of Castello v. Court, 28 Mo. 259, and Adcock v. Lecompt, 66 Mo. 1. c. 42, 43, upon which relator relies, were decided under the old statute. Under that statute the contest was triable at the first term held "fifteen days after the official counting of the votes." It seems to have been held that this provision applied whether or not there would be left twenty days for service. Then came the amendment inserting the clause quoted. Than those of the amendment, words could not well be more apt to change the former rule. The triability of the contest at a particular term of court was made to depend upon two things, i. e. that the term began fifteen days (1) after the official count, and (2) after the service of notice of contest. The question in Montgomery v. Dormer, 181 Mo. 1. c. 14, and State ex rel. v. Evans, 184 Mo. 1. c. 640, 641, was whether an *adjourned* term filled the statutory description of a "term" of court. Those decisions are not applicable to this case.

III. There was no service of the notice of contest. The statute (Sec. 5924, R. S. 1909) provides that "no election of any . . . county . . . officers shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted." The notice must be served "by delivering a copy thereof to the contestee, or by leaving such copy at his usual place of abode, with some member of his family over the age of fifteen years; or if neither such contestee nor his family can be found in the county, and service cannot be had as aforesaid, it shall be a sufficient service of such notice for the contestant to post up a copy thereof

Notice.

in. the office of the clerk of the court wherein the contest is to be heard." The official count was completed and the result announced November 11, 1918. The statute (Sec. 8057, R. S. 1909) prescribes the applicable rule for computing time as follows: "Fourth, the time within which an act is to be done shall be computed by excluding the first day, and including the last, if the last day be Sunday it shall be excluded." December 1, 1918, fell on Sunday. Had it been any other day of the week it would have been the last day for service under the statute. Being Sunday the statute requires it to be excluded. It is at this point a difference of opinion arises. Respondent contends that when it is excluded, Saturday, November 30th, became the last day for service. Respondent thus seeks to exclude Sunday, December 1st, from the *time for service*. This loses sight of the language and purpose of the statute. What the statute lays down is a rule for *computing* the time within which an act is to be done. The words "Sunday shall be excluded" means it shall be excluded from the *computation*, not from the time within which the act shall be done. Excluding Sunday, December 1, 1918, from the *computation* leaves Monday, December 2nd, as the last day upon which service could have been made. The construction contended for by respondent was given this statute by this court at the January term, 1870. [Patrick v. Faulke, 45 Mo. 312.] At the March term, 1870 (Bank v. Williams, 46 Mo. l. c. 19), as is pointed out in Jordan v. Railroad, 92 Mo. App. l. c. 85, the Patrick case was "virtually overruled." In Keys v. Keys, 217 Mo. l. c. 65, in an opinion by GRAVES, J., this view of the Court of Appeals is approved and abundant other authorities cited. In Walker v. Sundermeyer, 175 S. W. l. c. 187, in an opinion by ROY, C., Keys v. Keys, was approved and followed. There are other decisions in point announcing the same rule. The statute is not fairly susceptible of any other construction. State ex rel. v. McElhinney, 199 Mo. l. c. 80, is relied upon by respondent. It is to be observed that the court was not deciding the point now in issue. The

Statement there made of the rule did not affect the decision in that case. The fact that Sunday was excluded answered the argument the court was examining, and no occasion arose to discriminate between the rule now contended for by respondent and that announced in the cases already cited.

Applying the settled rule, the last day for personal service in the contest proceeding was Monday, December 2, 1918. It is admitted the notice was posted at 2 p. m. Saturday, November 30th. No effort to secure personal service was made after that time. If the officer could, two and a half days before the expiration of the time therefor, abandon all effort to secure personal service, the requirement therefor would tend to become merely perfunctory. The service of notice of contest is like the service of petition and summons. The return was premature and illegal. (Lumber Co. v. McCabe, 220 Mo. l. c. 167, et seq., and cases cited) and constituted no basis for constructive service. There was no service, personal or constructive.

IV. It is urged relator appeared in the contest proceeding and thereby waived the lack of service. It is Waiver. settled that an election contest is a special and statutory proceeding, not according to the course of the common law. From an early date it was held in such cases that notice in accordance with the statute was essential to jurisdiction. [Castello v. Court, 28 Mo. l. c. 275, 276; In re Wilson v. Lucas, 43 Mo. l. c. 293, 294; Bowen v. Hixon, 45 Mo. l. c. 344, 345; Ramsey v. Huck, 267 Mo. l. c. 338, 339, and cases cited; State ex rel. v. Robinson, 270 Mo. l. c. 222, 223, and authorities cited.] The statute (Section 5924, R. S. 1909) specifically provides that "no election of . . . any county officer *shall be contested unless notice of such contest shall be given the opposite party within twenty days after the votes shall have been officially counted.*" This court has repeatedly held this provision is peremptory, as shown by the cases cited above. In State ex rel. Newell v. Cave,

272 Mo. 653, it was held the contestee had waived 'lack of service of notice by serving and filing and amending his counter notice and moving to strike out parts of the notice, all before he challenged the jurisdiction for want of service, and that this waiver conferred jurisdiction. The dissenting opinion points out that this is a new rule in this State as applied to election contests for officers falling within Section 5924, Revised Statutes 1909. In an ordinary action an appearance solely to challenge jurisdiction for lack of service gives no jurisdiction of the person. [Huff v. Shephard, 58 Mo. l. c. 245, 246.] Whether, in such an action, an appearance is general or special is one of intent (Woodard v. Milling Co., 142 N. C. l. c. 102) and the intent is to be determined from the facts at the time. [Fisher v. Crowley, 57 W. Va. l. c. 323.]

The first motion filed by the contestee (relator here) was not based solely upon the ground that a copy of the notice of contest had not been delivered or posted in proper time. The fifth and seventh grounds challenged the legal sufficiency of the notice. The sixth ground charged, in effect, that the term of court at Kansas City was one into which no notice could bring the contestee, and the eight ground was that no notice had been so filed that any contest was pending. The amended motion contained a ground to the effect that the court had no jurisdiction under the article on contested elections.

In an ordinary action combining other grounds, in the first instance, with an attack on the jurisdiction of the person, ordinarily constitutes a waiver of objections to service. [State ex rel. v. Grimm, 239 Mo. l. c. 171, et seq., and cases cited; Iddle v. Hamler Co., 132 La. l. c. 478; City Natl. Bank v. Walker, 130 La. l. c. 811; Crowell v. Galloway, 3 Neb. 215; Fitzgerald v. Fitzgerald, 137 U. S. 98; Crawford v. Foster, 84 Fed. l. c. 941; Kaw Life Assn. v. Lemke, 40 Kan. l. c. 145, and cases cited; Elliott's Appellate Procedure, par. 678.]

V. Is the same rule applicable, in all respects, to an election contest? Waiving any argument which depends

upon the principle announced in State ex rel. v. Robinson, supra, and the cases preceding it, the writer nevertheless thinks the question put should be answered in the negative. In the first place, there is a distinction between the Newell case and this. There the jurisdiction was never questioned until long after contestee had filed his counter notice and amended counter notice and had invoked affirmative action of the court as well as moved to strike out parts of the notice on non-jurisdictional grounds.

**Waiver in Election Contest.**

In this case the statute provides for a summary disposition of the proceeding and explicitly excludes formal pleadings.

(a) The first four grounds clearly constituted no waiver. (b) The attack upon the legal sufficiency of the notice waived nothing unless we are to overrule a contrary holding acquiesced in by the Legislature for sixty years. Judge Lackland discussed the meaning of the statute in an identical case, on the same question of waiver, in his return in Castello v. Court, 28 Mo. l. c. 265. That construction of the statute was approved in the opinion. The comment he made on the effect of counter notice need not be considered since Section 5924 is not, in that respect, like the section then under consideration. With respect to the effect of the motion in that case, Judge Lackland said it was "the object of the statute to give the notice a double operation, that is, to bring the party into court and to set forth and advise the court of the grounds of contest; that the notice required by the statute seemed designed to stand in lieu of and perform the functions of a writ and petition in an ordinary suit; and it would seem to be just as unreasonable to say that the contestee could not appear in court and object to the notice upon the ground that it is insufficient in law as to say that a defendant could not appear in court and demur to a petition in an ordinary suit." By this the learned judge, and, by adopting it, this court, evidently meant (as the

State ex rel. Bulger v. Southern.

context shows) that a contestee in a ·contest for a county office was entitled to be served within statutory time with a legally sufficient notice and that service of one not ' legally sufficient was not service at all; that a challenge to the jurisdiction over the person could, under the statute, be made for want of any timely service and for want of timely service of a legally valid notice; that to assail the legal sufficiency of the paper served was to assail the service itself. He concluded that such an attack waived nothing, and this court approved· that construction of the statute. (c) The sixth ground is construed by counsel to be an attack on the service because no notice was served in time for the Independence term. It is open to this construction and the intent of the movent is of consequence upon the question of waiver. [Harkness v. Hyde, 98 U. S. 1. c. 479; Woodard v. Milling Co., supra.] This ground of the motion, in view of the rule, ought not to be held to constitute waiver. The same may be said of the eighth ground. (d) The charge that the court had no power to make the order under the contest statute might have meant more things than one. The motion as a whole shows an attack on the jurisdiction for want of service. If there was no service it was true as charged, that the court had no jurisdiction· to do anything. It does not accord with the great weight of authority to select a meaning for words used in a motion, filed as a special appearance, which will transform it into a general appearance, especially in case the words are fairly open to a construction harmonizing with the explicit declaration that a special appearance is intended.

VI. The preliminary rule is made absolute. *Faris* and *Williams, JJ.,* concur; *Graves, J.,* concurs in separate opinion; *Walker, J.,* concurs in paragraphs 1, 2 and 3, and in the opinion of *Graves, J.; Woodson, J.;* dissents in an opinion in which *Bond, C. J.,* concurs.

GRAVES, J. (concurring.)—I concur fully in paragraphs one, two and three of the opinion, and in the

result. Paragraph three properly holds that there was no service of the notice. This ruling takes from the case all questions of waiver of service. Absent a valid service of notice, the court acquired no jurisdiction of the contest, i. e. the subject-matter, and this cannot be waived. In contests provided for by Section 5924, Revised Statutes 1909, a properly-served notice is a prerequisite to jurisdiction, both as to subject-matter and person. The contestee cannot waive jurisdiction over the subject-matter. The very wording of the statute withholds jurisdiction of the court over the contest, until this notice is properly given. It says "no election of any county officer *shall be contested unless notice of such contest shall be given the opposite party within twenty days after the votes shall have been officially counted*" a clear condition precedent to a contest at all.

We have contested election proceedings wherein the circuit courts are given jurisdiction, which have not this prerequisite of jurisdiction required by Section 5924, supra. The contests involved under Section 5957 and 5965, Revised Statutes 1909, are examples. In these cases the contestant files his petition in court as in an ordinary action, and this act invokes the jurisdiction of the court over the subject-matter. These statutes provide for bringing in the contestee by summons, as in ordinary actions. So that in these cases the court acquires the jurisdiction of the subject-matter (the contest) by the filing of the petition. In such case the usual rule of waiver as to jurisdiction over the person applies.

This, however, has no application to these summary proceedings under Section 5924, supra, where as a prerequisite of any kind of jurisdiction there must be a properly served notice. Such has been the universal ruling of this court from Castello v. St. Louis Circuit Court, 28 Mo. 259, up to and including State ex rel. v. Robinson, 270 Mo. 212. The case of State ex rel. v. Cave, 272 Mo. 653, is an innovation. However, our individual views are fully expressed in State ex rel. v. Cave, 272 Mo. l. c. 663 et seq., and in State ex rel. v.

Robinson, supra, and we can add but little to what is there said.

So, whilst I think my learned brother has written well on the question of waiver, I do not think it is in this case at all. For these reasons, I concur as above stated. *Walker, J.*, concurs in these views.

WOODSON, J. (dissenting.)—This is an original proceeding instituted in this court against the respondent, seeking to prohibit him from proceeding with the trial of the case of Bert W. Welch v. Miles Bulger, wherein the former is contesting the latter's election as Presiding Judge of the County Court of Jackson County. A temporary writ was issued by this court, and in due time the respondent made return thereto.

The facts of the case are undisputed, and are stated by counsel for respondent in substantially the following language:

Miles Bulger, and Bert W. Welch, respondent, were opposing candidates at the November (1918) election for the office of Presiding Judge of the County Court of Jackson County, Missouri. Said election was held on the fifth day of November, 1918, and on the 11th day of that month the Board of Election Commissioners of Kansas City, Missouri, completed the official count and made the announcement of the votes cast at the election, and upon the face of the returns said Miles Bulger was elected and a certificate of election was duly issued to him. On November 27th, the respondent, Bert W. Welch, filed in the office of the Clerk of the Circuit Court of Jackson County, Missouri, at Kansas City, a notice of election contest and two copies thereof, as required by the rules of the court, and caused the same to be delivered on November 27th, to O. H. Gentry, Jr., Sheriff of Jackson County, Missouri, for service upon the said Miles Bulger. Thereafter, the said sheriff retained said papers until the 30th day of November, 1918, at the hour of two o'clock p. m., when he posted the same in the office of the Clerk of the

278 Mo.—40

Circuit Court of Jackson County, Missouri, where suit was pending. The contest was returnable to the January term of said court which began January 13, 1919.

The return shows that the sheriff made diligent search for and failed to find the said Miles Bulger in Jackson County, Missouri, and he made diligent search for and failed to find any member of his family over the age of fifteen years at his usual place of abode in said county, or in said county; and thereupon served the within notice on November 30, 1918, at two o'clock p. m. by posting up a copy thereof in the office of the Clerk of the Circuit Court of Jackson County, Missouri, at Kansas City.

On or about December 20, 1918, contestant filed an application in said circuit court held at Kansas City, asking for an order opening the ballot boxes as provided by statute. On or about January 3, 1913, contestee appeared in said court and filed his motion to quash this application. Thereafter said Bulger filed an amended motion to quash contestant's application to open the ballot boxes.

The grounds upon which the motion to quash was based were: First, that the said court was without jurisdiction to hear and determine said contest, for the reason that Welch did not give Bulger notice of the alleged contest within twenty days after the official count of the votes cast at said election; second, that said notice of contest was not served fifteen days before the first term of the circuit court held fifteen days after the official count of said votes; third, that said contest was not instituted at Independence, where the term of court began December 2, 1918; fourth, that posting notice in the office of the Clerk of the Circuit Court of Jackson County, Missouri, at Kansas City, at two o'clock p. m. November 30, 1918, was constructive service, and that the writ was prematurely returned; that the sheriff should have held it for the full time directed by law—that is to say, twenty days.

On December 17, 1918, contestant served a notice upon the contestee that he would make an application to the circuit court, in the Assignment Division thereof, over which the respondent Southern presided, for an order upon the Board of Election Commissioners to open the ballot boxes.

On December 30, 1918, the petitioner appeared specially and filed a motion to quash said order, which motion was, by leave of the court, on January 6, 1912, withdrawn and another motion filed, setting up that said court was without jurisdiction to hear and determine said contest, because the contestant did not give the contestee twenty days' notice, as required by law.

Second. That said court was without jurisdiction to hear and determine said contest for the reason that no notice of said contest was legally served upon contestee by said contestant or upon any member of his family, at his usual place of abode, over the age of fifteen years, or with anyone else.

Third. That the pretended constructive service by posting up a copy of the notice in the clerk's office at two o'clock p. m., November 30, 1918, was prematurely done by the sheriff, and that he was without authority to post said notice, and that said pretended constructive service was null and void and did not bring the contestee into court.

Fourth. That said court was without jurisdiction to make the order requested by contestant upon the Board of Election Commissioners, because no power was given under Article 6 of Chapter 43 of the Revised Statutes of Missouri of 1909, to make such an order.

Fifth. That the said court was without jurisdiction to hear and aetermine said contest because the first term of the Jackson County Circuit Court held after said election, was begun at Independence, Missouri, on December 2, 1918; and that if contestant desired to institute a contest, he should have filed it at Independence, Missouri, instead of at Kansas City.

Contestant also served notice upon contestee that he would take depositions in said cause, and the contestee filed a motion in said court to quash said notice, restating the same grounds, except that applying to the Board of Election Commissioners.

On the 8th day of January, 1919, the court overruled contestee's motion to quash the order to open the ballot boxes, and on January 10th he overruled contestee's motion to quash the notice to take depositions; and on January 10th, respondent issued his order to the Board of Election Commissioners to open the ballot boxes, which the petitioner challenges on the ground that there is no authority given by the statutes of Missouri to issue such order to said board.

I. Counsel for relator insist that the circuit court acquired no jurisdiction over the subject-matter or the person of the relator for the reason that he was not served with the notice of the contest within twenty days after the completion of the count and announcement of the official votes cast at the election.

Service.

The record shows that the official count of the votes cast was completed and announced on November 11, 1918, and that on the 27th day of that month the notice was placed in the hands of the sheriff for service, which he held until two o'clock p. m., Saturday, November 30, 1918, when he posted up a copy of the same in the office of the Clerk of the Circuit Court of Jackson County, as provided for by statute.

The statute under which this contest was instituted is Section 5924, Revised Statutes 1909, and insofar as is here material, reads as follows:

"The several circuit courts shall have jurisdiction in cases of contested elections for county and municipal offices, . . . but no election of any . . . county, municipal or township officers shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted. . . . The notice shall specify the

grounds upon which the contestant intends to rely, and if objection be made to the qualifications of any voters, the names of such voters and the objections shall be stated therein, and the notice shall be served fifteen days before the term of court at which the election shall be contested, by delivering a copy thereof to the contestee, . . . or if neither such contestee nor his family can be found in the county, and service cannot therefore be had as aforesaid, it shall be a sufficient service of such notice for the contestant to post up a copy thereof in the office of the clerk of the court where the contest is to be heard."

The official count of the votes cast was completed November 11, 1918, and, therefore, under the provisions of the statute just quoted, the notice of contest ordinarily could have been served personally upon the contestee on or before December 1, 1918, for the reason the twenty days mentioned in the statute would have expired on that day; but under the facts of this case, December 1st, 1918, fell upon Sunday, and under Section 8057, Revised Statutes 1909, that day must be excluded, for the reason that it provides: "Fourth, the time within which an act is to be done shall be computed by excluding the first day and including the last, if the last day be Sunday it shall be excluded." So according to this statute, had the contestee been personally served on Saturday, November 30, 1918, it would have been in due time; but the return of the plaintiff shows that he was not personally served upon that day, or upon any other, but was constructively served on Saturday, November 30, 1918, at two o'clock p. m. by posting a copy of the notice in the office of the Clerk of the Circuit Court of Jackson County. The sufficiency of this service is challenged by the relator for the reason that the sheriff made his return prematurely, that is, at two o'clock, p. m., November 30, 1918, when he should have held it until the last minute of the last hour of that day, and should have exhausted all of that time in search for the contestee. We are cited to the fol-

lowing cases by counsel: Lumber Co. v. McCabe, 220 Mo. 1. c. 167; Van Natta v. Real Estate Co., 221 Mo. 1. c. 377; Tooker v. Leake, 146 Mo. 419; Cummings v. Brown, 181 Mo. 711.

These authorities do not support the proposition contended for by counsel for relator; nor is their challenge of the sufficiency of the service well grounded, for the reason that the law does not recognize fractions of a day in the service of process. [Kimm v. Osgood, 19 Mo. 1. c. 60; Shaffer v. Detie, 191 Mo. 1. c. 287; Columbia Turnpike Road v. Haywood, 10 Wend. 422; In re Puglisi, 230 Fed. 189; Cosgriff v. Board of Election Commissioners, 91 Pac. 99; Portland Bank v. Maine Bank, 11 Mass. 1. c. 205; 2 Freeman on Judgments, Section 370; Bruce v. Vogel, 38 Mo. 1. c. 104; United States v. Lumber Co., 142 Fed. 432; National Bank v. Burkhardt, 100 U. S. 689; Follet v. Hall, 16 Ohio, 111; Tilton v. Sterling Coal & Coke Co., 28 Utah, 173; Smith v. Commissioners, 10 Colo. 28; Long's Appeal, 23 Pa. 297; Linhart v. State, 33 Tex. Cr. R. 507; Fabien v. Grabow, 134 Mo. App. 1. c. 196; Central Coal & Coke Co. v. Graham, 196 S. W. 1. c. 943; Ladany v. Assad, 91 Conn. 316; Rice v. Beavers & Co., 71 Mo. 659; Hamilton v. State, 101 Tenn. 417; Hattiesburg Grocery Co. v. Tompkins, 71 So. 866; Lang v. Phillips, 27 Ala. 1. c. 314; Dierssen v. Ins. Co., 204 Ill. App. 240; Warren v. Slade, 23 Mich. 1; Wood on Limitations (2 Ed.), p. 119; Wiggin v. Peters, 1 Metc. 129.]

According to the law as announced in the foregoing authorities, the posting up of the notice of contest in the clerk's office at two o'clock p. m., November 30, 1918, which was also within the twenty days, was sufficient service of the notice; and this point should therefore be decided against the relator.

II. It is next insisted by counsel for relator that the contest proceedings were not instituted in the proper court, nor at the proper time of the court at which they should have been instituted. This insistence is based

To What Term of Court.

upon the provisions of Section 5928, Revised Statutes 1909. The parts here material are as follows:

"Every court authorized to determine contested elections, shall hear and determine the same in a summary manner, without any formal pleading, and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes, and service of notice or contest, unless the same shall be continued by consent or for good cause shown."

This court will take judicial notice of the fact, that the first term of the Circuit Court of Jackson County, which, under the law, could have been held after the official count of the votes cast at the November election of 1918, which was November the 5th of that year, would be at Independence on December 2, 1918. Upon these facts, it is contended by counsel that since the official count was completed and announced on November the 11th, 1918, and the first term of the Circuit Court of Jackson County thereafter began on December 2nd, following, the contest proceedings should have been brought in that court, and to that term thereof, for the reason that said term began fifteen days after November 11th, the day the official count of the votes cast was completed. In other words, their position is that the proceedings should have been brought to the December term, 1918, of the Circuit Court of Jackson County at Independence, notwithstanding the fact that at that time the twenty days within which the notice of contest was, by Section 5924, Revised Statutes 1909, required to be served upon the contestee would not then have expired; but in order to obviate this conflict between the two statutes, it is insisted that they should be so construed as to require the twenty days mentioned in Section 5924 and the fifteen days mentioned in Section 5928 to run concurrently, or that the fifteen days should curtail the twenty days to such a number as to leave only fifteen days time after the count of the votes in which to institute the contest proceedings at the first

term of the court thereafter to be held December 2, 1918. To illustrate: As explained in paragraph one of this opinion, the twenty days, on account of the last day thereof being Sunday, expired on November 30, 1918, which left only one day existing between that day and December 2nd, the first day of the December term; consequently, it is contended, that since the proceedings had to be instituted at the December term, 1918, the contestant had only from November 11th to November 17th in which to give the notice of the contest, which is only six days, instead of twenty as required by said Section 5924.

In passing, according to this construction, I desire to ask what disposition is made of December 1, 1918? I am unable to see where it has been counted under either theory of counsel for relator, but, fearing I have not correctly stated counsel's position regarding the proposition just mentioned, I will state it in their own language; it is as follows:

"So that the rule is iron-clad, that the contest must be brought at the first term of the circuit court held in the county, and the notice must be served fifteen days before that term begins; and if that cuts in on the twenty days' notice, the contestant has got to act accordingly and shorten his time. In this case he had only from November 11th to November 17th in which to give the notice."

This construction placed upon Section 5928 not only conflicts with Section 5924 as to giving the twenty days notice of the contest, but violates the letter and spirit of Section 5928 itself, the very statute they are construing.

That section provides that the court shall hear and determine the proceeding in a summary manner and to determine the same at the first term of such court that shall be held fifteen days after the official counting of the votes, *and service of the notice of the contest.* (Italics ours).

Counsel have ignored the italicized words in placing their construction upon the statute. That should not be done, for it is a well known canon of statutory construction, that all the parts of a statute and all of its words should be given a meaning when it is possible to so do without violating the clear intention of the Legislature, as gathered from the entire act; that rule also requires the court when construing statutes *in pari materia* to place that construction upon each which will harmonize all of their provisions with each other, and thereby give full force and effect to both. [Cape Girardeau-Jackson Interurban Railway Co. v. Light & Development Co., 277 Mo. 579, and cases cited.]

By thus reading and construing the two statutes together, it seems clear that what the Legislature meant was, that the court in trying the cause shall determine the same at the first term of the court which should be held fifteen days after the expiration of the twenty days allowed for serving the notice of contest, which, of course, under the provisions of Section 5924, would have to begin the next day after the official count had been completed, which in the instant case was November 11th, as before stated. So if this is what the Legislature meant, the proceedings could only have been instituted at a term of the circuit court which had begun not earlier than fifteen days after November 30th, which was the date upon which the twenty days' notice expired, as held in paragraph one of this opinion. This construction is also in keeping with the language of said Section 5928, for the reason that it provides that the contest shall be determined at the first term of the "court that shall be held fifteen days after the official counting of the votes, *and service of notice of contest.*" Not simply after the expiration of fifteen days after the official count is completed, but at the first term after the expiration of both the fifteen and twenty days have elapsed. Had the Legislature used the words "and after the expiration of the twenty days notice required to be given of the contest" instead of those previously italicized, there could have been no shadow of doubt as

to the meaning of the Legislature, for in that case the statute would then have read as follows: The court shall hear and determine the contest "in a summary manner, without formal pleading; and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes, *and after the expiration of the twenty days' notice required to be given of the contest.*" These italicized words have precisely the same meaning as thus used as those previously italicized have as used in the statute.

This construction of those statutes also utilizes the 1st day of December, 1918, beforementioned, as one of the days in computing the time in which the suit shall have been instituted, while under the construction given to them by counsel for relator that day is entirely ignored.

If I am correct, and this is the meaning of the statutes, then the proceedings could not have been instituted and determined at the December term, 1918, of the circuit court, sitting at Independence, but should have been brought to the first term of the Circuit Court of Jackson County, which was held, after the expiration of said fifteen and twenty days, the one attached to the other, or in other words, brought to the first term of that court which should have been held not earlier than thirty-five days after the completion of the official count of the votes cast, which was, as previously stated, on November 11, 1918; and since the record shows that the proceedings were brought to the January term, 1919, of the Circuit Court of Jackson County, sitting at Kansas City, and that it was the first term after the expiration of said thirty-five days, we hold that the proceedings were properly brought at that time and in that court.

Before passing to the next proposition presented for determination, it may not be amiss to notice the contrast between the strictness with which counsel for respondent deal with the twenty days' notice of the contest required to be given by Section 5924, Revised Statutes

1909, discussed in paragraph one of this opinion, and the looseness with which they are computed in construing Section 5928, in this paragraph of the opinion. In the former it is insisted that the contestee was entitled to the entire twenty days' notice, "the last minute of the last hour," while here they repudiate their former position, and say that only six days of the twenty must be counted.

We confess that the language of this statute does not clearly designate to what particular term of court the contest proceedings shall be brought, or the exact time when they shall be instituted, but when we consider the fact that the statutes are dealing with county, municipal, school and township elections, and that they are held at different times of the year, and the further fact that no one can tell the exact date when the official count of the votes cast will be completed or announced, it readily occurs to me why the Legislature could not definitely designate the court or the term thereof when the proceedings should be instituted, especially when the various terms of the various circuit courts of the various counties are two or three times more numerous than are counties in the State.

The further fact that the Legislature was evidently trying to fix a reasonable time in which the parties might prepare their notices of contests, which also serve as the pleadings in the case, prepare their cases for trial, and compel a speedy trial thereof on account of the public interest being involved, also caused the Legislature to use rather flexible language in trying to cover all such cases, instead of fixed terms which might not be held for months after the vote had been cast, and counted.

In the light of all the facts the Legislature was dealing with, if we carefully read the language of these statutes, there will be but little diffculty encountered in ascertaining when and where all such contests should be brought, as previously shown.

III.   Counsel for relator finally insist that there is no law in this State authorizing the circuit court to order the Board of Election Commissioners to open the ballot boxes, count the votes or compare them with the list of votes. This insistence is untenable.

Recount of
Ballots.

Section 3 of Article 8 of the Constitution provides that: ''In all cases of contested elections, the ballots cast may be counted, compared with the list of voters and examined under such safeguard and regulation as may be prescribed by law.''

Counsel for the relator contend that the Legislature has complied with this mandate of the Constitution by enacting Sections 5939, 5940, 5941, 5942 and 5943, Revised Statutes 1909, and thereby authorizing the Clerk of the County Court, under the order of the circuit court, to examine, count and compare the ballots cast under the safeguards prescribed therein, but deny that the Legislature has authorized the board of election commissioners to so act, under such an order of the circuit court.   Counsel have overlooked certain statutes bearing upon this question.   Section 6091,   Revised Statutes 1909, as amended by Section 1, page 244, Laws 1911, creates a board of election commissioners for cities of the State having one hundred thousand inhabitants or over, prescribes their qualifications and manner of their appointment, and provides for the registration of the votes and elections to be held in such cities.   This section requires the commissioners to secure and open an office and preserve the property thereof; also upon the appointment of the commissioners the county clerk of the county in which any such city is situated, or other custodians of said property, shall, upon demand, turn over to the board of election commissioners all registry books, poll books, tally sheets and ballot boxes heretofore used and all other books, forms, blanks, stationery and property of every description in his hands in any way relating to registration or elections, or the holding of elections, within said city.

It also provides that all duties now vested in and required of the board of election commissioners in said cities shall rest in and be required of the board of election commissioners herein provided for.

Prior statutes had created similar boards for such cities, and conferred the same powers and imposed the same duties upon them that the Act of 1911 has imposed upon the present board of election commissioners, and that is why the last clause of said Section 1 of the Act of 1911 provided that the powers conferred and duties imposed upon such boards should rest in and be required of the boards mentioned in the Act of 1911.

Section 5922, Revised Statutes 1909, found in Chapter 43, Article 5, headed "Ballots, Voting and Returns," provides that the powers and duties given and imposed by that article upon the clerks of county courts of the several counties of the State shall be exercised in reference to the City of St. Louis and Kansas City, and to any other city hereafter having a registration of votes, by the board of election commissioners of such city.

Section 5939, Revised Statutes 1909, in express terms provides that the circuit court shall have power to order the Clerk of the County Court in which the contest is held, commanding him to open, count and compare the ballots with the list of voters, and examine the ballots in his office which were cast at the election in question, etc.

And Section 6143, Revised Statutes 1909, provides that the board of election commissioners shall proclaim the results of election, and that they shall be the custodian of the ballot boxes, ballots, books, etc., and that they shall keep said boxes locked up securely for a period of twelve months, and at the end of said twelve months after said election, said ballots may be destroyed; *provided,* that if any election contest or prosecution of election officer shall be pending at the expiration of said time, the said ballots shall not be destroyed until such contest shall be finally determined,

"and in all cases of contested elections, the parties contesting the same shall have the right to have such ballots opened and counted and to have all errors of the judges in counting or refusing to count such ballots corrected by the court at the time of such contest."

Under the foregoing statutory provisions there can be no question but that the Board of Election Commissioners of Kansas City possess the same power and have the same duties imposed upon them regarding elections and election contests that the various clerks of the county courts throughout the State have; and when we read Section 5939, which imposes upon the clerks of the county courts the duty to open and compare the ballots, in connection with Section 5922, which imposes the same duty upon the Board of Election Commissioners of Kansas City, and with Section 6143, which expressly gives the contestant the right to have the ballot boxes opened and the ballots counted, compared, etc., there can be no reasonable doubt but that the Legislature intended that the Board of Election Commissioners of Kansas City should, in an election contest, open, count and compare the ballots under the order of the circuit court in the same manner and under safeguards that the Clerk of the County Court might do in any other county of the State, under like conditions.

Entertaining these views, we are of the opinion that our preliminary writ of prohibition was improvidently issued. I therefore dissent. *Bond, C. J.,* concurs herein.