MANCHESTER IRON WORKS, INC., a Corporation, Plaintiff, v. E. L. WAGNER CONSTRUCTION COMPANY, a Corporation, ET AL., Defendants, THEODORE J. NOLTE, LACLEDE BOND & MORTGAGE COMPANY, a Corporation, SAMUEL ROSENBERG, M. KAUFFMAN, J. I. EPSTEIN, JR., and LOUIS J. FORNOFF, Defendants-Appellants, MODERN TILE COMPANY, a Corporation, H. J. WRIGHT, Doing Business as H. J. WRIGHT PAINTING COMPANY and C. A. MYERS, Doing Business as C. A. MYERS HARDWOOD FLOORING COMPANY, Defendants-Respondents.—107 S. W. (2d) 89.

Division One, June 30, 1937.*

*NOTE: Opinion filed at September Term, 1936, April 21, 1937; motion for rehearing filed; motion overruled at May Term, 1937, June 30, 1937.

*Thomas Bond* and *Otto O. Fickeissen* for appellants.

*E. McD. Stevens* and *Lee, Fricke & Lee* for respondents.

FRANK, P. J.—This is an equitable mechanic's lien action involving three lien claims. The decree below established the liens in favor of respondents. This appeal followed.

In September, 1925, E. L. Wagner Construction Company was the owner of contiguous lots numbered 30-31-32-33-34 and 6.71 feet of lot 35 in De Mun Park, a subdivision of St. Louis County. About the time aforesaid the owner began the construction of five separate apartment buildings, one on each of said lots.

Plaintiff, Manchester Iron Works, Inc., furnished materials which went into the construction of each of the five buildings. After the buildings were completed, and on March 14, 1927, said plaintiff brought five separate equitable mechanics' lien actions, one against each of the five separate properties. For brevity we will refer to these suits as suit number one, two, three, four and five respectively. After the filing of these five separate suits, numerous other lien claimants filed separate cross-petitions in plaintiff's suit number one, some seeking a lien on one or more of the properties, others seeking a general or blanket lien on all of the properties.

On August 16, 1927, respondent, Modern Tile Company, filed a cross-petition in suit number one in which it sought one general or blanket lien on all five of the properties.

Thereafter, and on the same date, respondent, H. J. Wright, doing business as H. J. Wright Painting Company, filed a cross-petition in suit number one in which it sought a lien on the property described in suit number five.

Thereafter, and on the same date, respondent, C. A. Myers, doing business as C. A. Myers Hardwood Flooring Company, filed a cross-petition in suit number one in which it sought a lien on the property described in suits number three and five.

It should also be stated that each of the respondents filed independent suits to enforce their lien prior to the time they filed cross-actions in plaintiff's equitable action.

Some months prior to the time respondents filed their cross-petitions in suit number one, two other lien claimants filed cross-petitions in

said suit, in which they each asked a general or blanket lien on all five of the properties.

All of the lien claims were compromised and settled except the claims of the three respondents herein. The cause was dismissed as to all claimants whose claims were compromised and settled, leaving the claims of respondents to be adjudicated in this proceeding.

By order of court suits number two, three, four and five were consolidated with suit number one, and the consolidated cause was sent to a referee with instructions to hear said cause and report his find-. ings of fact and conclusions of law to the court. The referee heard the cause, found that respondents were each entitled to the judgment lien prayed for in each of their cross-petitions and so reported to the court. Exceptions to the referee's report were filed and overruled. The report was approved and a decree rendered in accordance therewith.

 Appellants contend that the court erred in ordering the causes consolidated. In support of this contention the following statutes and cases are cited. [Secs. 3180, 3181 and 3183, R. S. 1929; Mansfield Lumber Company v. Johnson, 91 S. W. (2d) 239, 241-2; Richards Brick Company v. Wright, 82 S. W. (2d) 274, 279.]

These statutes provide that any lien claimant may bring an equitable action to enforce his lien. The effect of bringing such equitable action is to stay all suits theretofore brought, prevent the bringing of other separate suits, and require all lien claimants to become parties to such equitable action and assert their lien claim therein, in order that the rights of all lien claimants may be adjudicated, determined and enforced in one action.

The plaintiff, Manchester Iron Works, Inc., brought five separate equitable actions instead of bringing one action. No doubt the plaintiff could have brought one equitable action and stated his cause in five counts. The necessary and only effect of the order of consolidation was to convert the five separate suits into one equitable action consisting of five counts. The consolidated case affects all of the properties. By express provision of Section 3181, supra, all persons claiming a lien against said property, *or any of it,* were required to become parties to said action and assert their rights therein. A court of equity has inherent power to accomplish such a result. Corpus Juris, Vol. I, page 1128, states the rule as follows:

"In equity the conditions authorizing a consolidation differ from those which will warrant a consolidation of actions at law, the chief inquiry being with regard to the subject matter involved in the different suits, and it being unnecessary that there should be the same identity of parties as is essential to authorize a consolidation at law. A consolidation in equity is therefore ordinarily proper wherever the subject matter involved and relief demanded in the

different suits make it expedient for the court, by hearing them together properly to determine all the issues involved and adequately adjudicate the rights of the different parties."

The same author at page 1123 states the rule thus:

"While there is some authority to the contrary, the great weight of authority, both in this country and England, is to the effect that the power of a court of equity to consolidate suits is inherent or implied from its general power to make reasonable rules for the transaction and regulation of its business."

Neither the statutes nor the cases cited by appellants support their claim of error in the consolidation of the cases. The statutes provide and the cited cases hold that when an equitable action is brought all lien claimants must intervene as parties to such equitable action. Appellants argue that the order consolidating cases two, three, four and five with case number one, instead of requiring the parties to such separate actions to intervene as parties in the proper equity action, was contrary to the statutes and the holding in above cases. There is no merit in this argument. The order of consolidation converted the five separate actions into one consolidated equitable action. Respondents who had intervened as parties to suit number one prior to the consolidation, necessarily became parties to the consolidated action, by virtue of the order of consolidation.

Appellants next contend that under the code of civil procedure said causes could not be consolidated because there is no identity of parties and because the actions are not based upon liquidated demands. [Sec. 943, R. S. 1929; Anderson v. Gaines, 156 Mo. 664, 668-9, 57 S. W. 726; Priddy v. Mackenzie, 205 Mo. 181, 200, 103 S. W. 968; Jegglin v. Orr et al., 224 Mo. App. 773, 776-7 are cited in support of this contention.]

Section 943, Revised Statutes 1929, cited above provides as follows:

"Whenever several suits founded alone on liquidated damages shall be pending in the same court by the same plaintiff, against the same defendant, or whenever several such suits are pending in the same court, by the same plaintiff against several defendants, the court in which the same shall be prosecuted may in its discretion, if it appears expedient, order such suits to be consolidated into one action."

It may be conceded that this statute would not authorize the consolidation of the suits in question. This statute is a part of the code of civil procedure but is not a part of the mechanic's lien law. By express provision of Section 3164, Revised Statutes 1929, which is a part of the mechanic's lien law, it is provided that the provisions of the code of civil procedure apply *except where it is otherwise provided in the mechanic's lien law.*

Section 3180, Revised Statutes 1929, which is a part of the mechanic's lien law, provides that "Any and all liens in this article provided for may be adjudicated and determined and the rights of all parties interested in the same and in the property and any of the property against which the same is claimed may be adjudicated, determined and enforced in one action." It is at once apparent from a reading of this section of the mechanic's lien law that neither identity of parties nor liquidated demands are necessary prerequisites to the voluntary or forced joinder of all lien claims in one action. Otherwise stated, all lien claims, regardless of identity of claimants, and regardless of whether such claims are liquidated, may all be joined in one action. Where separate actions are brought, a court of equity has inherent power to consolidate such separate actions in order that the rights of all lien claimants may be adjudicated and enforced in one action as provided in Section 3180, supra. For these reasons Section 943, Revised Statutes 1929 of the general code of civil procedure has no application. [Mansfield Lumber Company v. Johnson, 91 S. W. (2d) 239.] Neither do the cases cited by appellants on this point apply. They are not mechanic's lien cases. They deal with questions which are governed by the general code of civil procedure and for that reason they are not of controlling influence in a case where the provisions of the mechanic's lien law govern. [Sec. 3164, R. S. 1929; Badger Lumber & Coal Company v. Robertson, 297 S. W. 99.]

It is next contended that the court erred in dividing the claim of respondent, Modern Tile Company, into five parts, and in allocating percentages thereof to each of the five buildings, because such procedure was not authorized by either the pleadings or proof.

It is true that this respondent filed one general or blanket lien against all the properties, and in its pleading prays for the enforcement of that lien and for all other equitable and proper relief. The record shows that after the liens attached, the properties in question passed into the hands of different owners. These new owners were made parties to this action. In this situation, the trial court, sitting as a court of equity, under the broad and liberal provisions of the mechanic's lien law, and under respondent's pleading which asked for all equitable and proper relief, had authority to protect the rights and interests of the new owners, by allocating the claim of this respondent and charging each building with its proper part thereof, if that could be done without injury or prejudice to respondent or other lien claimants. Section 3180 of the mechanic's lien law expressly provides that the action "shall be an equitable action for the purpose of determining, establishing and enforcing the various and respective rights of the parties thereto."

The properties passed into the hands of different owners after

the liens in question had attached. The new owners would not be entitled to an allocation and distribution of this claim if it would prejudice the accrued rights of this claimant. But there was no showing that the allocation of the claim would prejudice the rights of this or any other claimant. On the contrary, the referee found that the value of the properties was ample to secure the claim after it had been allocated, and that such allocation would protect the interests of the new owners by obviating the necessity of their bringing a new action to compel an equitable distribution of the claim among themselves. We hold the allocation was proper.

This brings us to the contention that there was no evidence upon which an allocation of the claim could be based.

Two of the houses were large six family apartments. The other three were small three family apartments. Louis Clundt, president of the Modern Tile Company, testified that he gave E. L. Wagner Construction Company, the owner, a bid on the marble and tile work for the five houses. This written bid shows that the Tile Company proposed to furnish and set the marble and tile work for a stated sum per house for the two larger houses, and a different stated sum per house for the three smaller houses. The bid totaled $11,166.

The record further shows that after the work was completed the Modern Tile Company presented the owner with a bill or statement for the amount due it for the marble and tile work. This statement recited a lump amount per house for the two larger houses and a different lump amount per house for the three smaller houses. The statement totaled the sum of $11,166, the same as the bid for the work. The record shows that $4900 had been paid on the bill leaving a balance due thereon of $6266. The referee applied the rates of allocation as shown by the statement of the account to the general credit of $4900, and recommended a lien on each property for the amount charged against it in such statement, less a credit of its pro rata part of the general credit of $4900. Such evidence was a sufficient basis for the allocation made.

Appellants contend there can be no lien without pleading and proof that the work and materials actually entered into the construction of the particular building sought to be charged with the lien.

In support of this contention appellants say that in proving its case Modern Tile Company offered no proof as to the amount or kind of material, or the amount of labor that is claimed to have gone into each of the buildings. On the contrary, it only attempted to prove that all the work, labor and material liened for went into all five of the buildings.

The rule contended for has no application to a case where the contractor and the owner agree upon a definite lump price for the

material and work. In such a case the contractor need not prove the items of the various materials furnished and the labor performed in complying with the contract. Proof that such a contract was made and performed is sufficient. [State ex rel. St. Francois County Building & Loan Assn. v. Reynolds et al., Judges, 288 Mo. 522, 232 S. W. 1035.]

In the instant case there was evidence that the owner and contractor agreed upon a definite lump price per house for the labor and material to be furnished for each house. There was likewise evidence that each of the houses were completed, and after such completion the president of E. L. Wagner Construction Company, the owner, checked the work done by Modern Tile Company and did not discover anything wrong either as to price, material or workmanship. Such proof brings this claim within the authority last above cited.

■ It is contended that respondents, Wright Painting Company and C. A. Myers Hardwood Flooring Company are not entitled to a lien because neither their independent suits nor their cross-petitions in the equity suits were filed within the time required by law.

Section 3172, Revised Statutes 1929, fixing the time in which suits to enforce a mechanic's lien shall be brought, reads as follows:

"All actions under this article shall be commenced within ninety days after filing the lien, and prosecuted without unnecessary delay to final judgment; and no lien shall continue to exist by virtue of the provisions of this article, for more than ninety days after the lien shall be filed, unless within that time an action shall be instituted thereon, as heretofore prescribed."

It is conceded that the independent suits brought by these respondents to enforce their lien were brought on the ninety-first day after the liens were filed, but they contend that the ninetieth day being Sunday, the time for bringing suit was extended until the following Monday under the provisions of Section 655, Revised Statutes 1929, the pertinent provisions of which read as follows:

". . . the time within which an act is to be done shall be computed by excluding the first day and including the last, if the last day be Sunday it shall be excluded. . . ."

One of the cases cited by appellants in support of the contention that the suits were not filed within the statutory time is Patrick v. Faulke, 45 Mo. 312. In that case the claimant had four months after the indebtedness accrued in which to file his lien account. The four-months period ended on Sunday. The claim was filed the following Monday. This court held in that case that the claim was not filed in time. Another case cited by appellants is Miner v. Tilley, 54 Mo. App. 627. That was a suit to enforce a mechanic's lien brought on the ninety-first day after the lien was filed, the ninetieth day being Sunday. The Court of Appeals questioned our holding in Patrick

v. Faulke, supra, but ruled that it was its duty under the Constitution to follow our ruling and held that the suit was not filed in time. This holding has not been followed by either the Court of Appeals or this court since that time. Reference to one case will suffice.

The case of State ex rel. Bulger v. Southern, 278 Mo. 610, 214 S. W. 100, was an election contest for the office of county judge. The statute provided that "no election of any . . . county . . . officers, shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted." The votes were officially counted on November 11, 1918. The twenty days within which the notice should have been given expired on Sunday, December 1, 1918. We held that since the twenty days ended on Sunday the following Monday was the last day upon which service of the notice could have been made. In so holding we said:

"The official count was completed and the result announced November 11, 1918. The statute (Sec. 8057, R. S. 1909) prescribes the applicable rule for computing time as follows:

" 'Fourth, the time within which an act is to be done shall be computed by excluding the first day and including the last, if the last day be Sunday it shall be excluded.' December 1, 1918, fell on Sunday. Had it been any other day of the week it would have been the last day for service under the statute. Being Sunday the statute requires it to be excluded. It is at this point a difference of opinion arises. Respondent contends that when it is excluded, Saturday, November 30th, became the last day for service. Respondent thus seeks to exclude Sunday, December 1st, from the *time for service*. This loses sight of the language and purposes of the statute. What the statute lays down is a rule for *computing* the time within which an act is to be done. The words 'Sunday shall be excluded' means it shall be excluded from the *computation,* not from the time within which the act shall be done. Excluding Sunday, December 1, 1918, from the *computation* leaves Monday, December 2nd, as the last day upon which service could have been made. The construction contended for by respondent was given this statute by this court at the January Term, 1870. [Patrick v. Faulke, 45 Mo. 312.] At the March Term, 1870 (Bank v. Williams, 46 Mo. l. c. 19), as is pointed out in Jordan v. Railroad, 92 Mo. App. l. c. 85, the Patrick case was 'virtually overruled.' In Keys v. Keys, 217 Mo. l. c. 65, in an opinion by GRAVES, J., this view of the Court of Appeals is approved and abundant other authorities cited. In Walker v. Sundermeyer, 175 S. W. l. c. 187, in an opinion by ROY, C., Keys v. Keys, was approved and followed. There are other decisions in point announcing the same rule. The statute is not fairly susceptible of any other construction."

In the case last cited the statute provided that *notice of contest should be given within twenty days after the votes had been officially counted.* In the case at bar the statute provides that suits to enforce mechanic's liens *shall be commenced within ninety days after filing the lien.* The provisions of the two statutes are identical and should be given the same construction. We hold that the suits were brought within ninety days after the filing of the lien. Since the suits were brought within the ninety days period the life of the liens was preserved thereby, and claimants could thereafter be made parties to the equitable action on motion of any party or by direction of the court, at any time before such equitable action was finally determined. [Secs. 3181 and 3187, R. S. 1929; Waters v. Gallemore, 41 S. W. (2d) 870, 873.]

It is next contended that respondent, Modern Tile Company failed to prove that its independent action was commenced within ninety days after the filing of its lien account, or that its cross-petition was filed in the equity action within that period.

Appellants are not in a position to raise this point. This case was heard before two different referees. On the hearing before the second referee the parties agreed that the cause be submitted upon the testimony taken before the first referee and such further testimony as might be offered before the second referee. In the abstract of the testimony taken before the first referee the record recites the following:

"Matters not material to any issue raised on this appeal, and matters not necessary to a complete understanding of the questions presented for decision on this appeal are omitted."

Such an abstract of evidence leaves it to counsel and not to this court to say what evidence is material. The holding of this court is that, "It will not do to allow appellant's counsel to cull over the record and present such evidence as they may think pertinent or material; the entire evidence must be set out, so that this court may, for itself, determine its materiality and probative force." [Reed, Administrator v. Peck, Guitar and Watson, 163 Mo. 333, 336-7, 63 S. W. 734; Mitchell v. Mitchell, 191 Mo. 475, 477, 90 S. W. 1147.] This court will not pass upon the sufficiency of the evidence where it is not fully set out in the record. [Davis v. Vories, 141 Mo. 234, 42 S. W. 707.] Where, as here, it is contended there was no evidence to establish a given fact, we will not disturb the finding of the trial court unless all the evidence is brought before us. [Bertke v. Hoffman, 330 Mo. 584, 586, 50 S. W. (2d) 107.] This contention is ruled against appellants.

The final contention is that the cross-bills of each of the respondents do not state facts sufficient to constitute a cause of action.

Appellants' theory of this contention is that the cross-bills attempt to state respondents' right to a lien in the alternative; that one alternative does not state a cause of action; that the failure of one alternative to state a cause of action renders the entire petition fatally defective. The argument made in support of this theory is that the cross-bills plead alternatively that respondents furnished materials to either the owner or the contractor; that if the materials were furnished to the contractor, then respondents were subcontractors and would be required to give the owner ten days' written notice before the filing of the liens as provided in Section 3175, Revised Statutes 1929; that the cross-bills do not plead the giving of such a notice and for that reason the second alternative fails to state a cause of action, which failure renders the entire petition fatally defective.

This contention necessitates an examination of respondents' cross-petitions. The alleged alternative allegation in Modern Tile Company's cross-petition reads as follows:

"That between the 17th day of June, 1926, and the 28th day of December, 1926, both inclusive, defendant at the special instance and request of, and under contract with said defendant, E. L. Wagner Construction Company, owner and original contractor, and/or Wagner-Grant-Bell Realty Company, either or both being contractors for the erection of said buildings and improvements, furnished labor and materials actually used in the construction of said buildings and improvements. . . ."

The cross-petition of the other respondents contain similar allegations.

We do not regard these cross-petitions as alternative pleadings. Section 798, Revised Statutes 1929, provides that, "Either party may allege any fact or title alternatively, declaring his belief of one alternative or the other, and his ignorance whether it be the one or the other." Our courts have held that a fact alternatively pleaded must be positively alleged coupled with an averment of the pleader's belief of one alternative or the other, and his ignorance whether it be the one or the other. [Nichols Company v. Hubert, 150 Mo. 620, 51 S. W. 1031; State ex rel. v. Walbridge, 69 Mo. App. 657; Otrich v. Railroad, 154 Mo. App. 420, 421, 439, 134 S. W. 665.] The second alleged alternative reads as follows: "and/or Wagner-Grant-Bell Realty Company, either or both being contractors for the erection of said buildings and improvements."

This allegation does not measure up to the requirements of an alternative pleading. It is not a positive allegation of a fact. On the contrary it is vague, indefinite, uncertain and meaningless. For these reasons it should be and is regarded as mere surplusage. When this allegation is disregarded and discarded there is left in the petition a positive allegation that the material in question was fur-

nished at the special instance and request of and under contract with said defendant, E. L. Wagner Construction Company, owner and original contractor. Since there is no allegation that the materials were furnished to a subcontractor, it was not necessary to allege the giving of a notice before the filing of the liens. The statute does not require the giving of such notice where materials are furnished to the owner. We hold the cross-petition stated a cause of action.

The judgment below should be and is affirmed. All concur, except *Douglas, J.*, not voting because not a member of the court when cause was submitted.